**Ibrahim Dende BOROKINNI, Petitioner,**

v.

**UNITED STATES IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

No. 91–1246.

United States Court of Appeals, Fourth Circuit.

Argued July 6, 1992.

Decided Aug. 19, 1992.

**32.** The intent behind Section 168(f)(3) was not made explicit in the Code's legislative history.

Phillip Williams, argued (Michael Maggio, on brief), Maggio & Kattar, Washington, D.C., for petitioner.

Donald Anthony Couvillon, Civ. Div., U.S. Dept. of Justice, Washington, D.C., argued (Stuart M. Gerson, Asst. Atty. Gen. and Richard M. Evans, Asst. Director, Office of Immigration Litigation, Civ. Div., U.S. Dept. of Justice, on brief), for respondent.

Before ERVIN, Chief Judge, and PHILLIPS and MURNAGHAN, Circuit Judges.

## OPINION

ERVIN, Chief Judge:

In 1983, Ibrahim Borokinni, an alien who had been granted permanent resident status the year before, was convicted of importation of a controlled substance and intent to distribute a controlled substance, after airport security officers caught him transporting 440 grams of heroin into the country. The Immigration and Naturalization Service (INS) began deportation pro-

ceedings. In 1987, an INS judge ruled that Borokinni was not eligible for exclusion from deportation because he had not had permanent resident status for the required seven years. Borokinni appealed that ruling and, in 1989, immediately after he had been a permanent resident for seven years, moved the Board of Immigration Appeals (BIA) to reopen his deportation proceedings. The BIA affirmed the INS judge's ruling and denied Borokinni's motion to reopen, finding that Borokinni had only achieved seven years of permanent resident status through a frivolous appeal. Borokinni petitions this court to review the BIA's decision, arguing that the BIA committed an abuse of discretion. Finding no abuse, we affirm.

### I

In 1974, Borokinni entered the United States from Nigeria on a student visa to attend John F. Kennedy College in Nebraska. He apparently was able to leave Nigeria by forging bank documents. The Nigerian government informed the State Department in 1975 that seven Nigerians, including Borokinni, had committed such forgery in order to leave Nigeria and enter the United States. Borokinni did not enroll at Kennedy College, but settled in Maryland instead, becoming employed as a deliveryman.

In 1977, Borokinni married a United States citizen, Mary Griffin. In early 1978, Griffin applied for an immediate relative visa on Borokinni's behalf, and Borokinni applied for permanent resident status. The INS granted the immediate relative visa, which the agency grants automatically to aliens with United States spouses, in April 1978. At the same time, the INS informed the couple that Borokinni's application for permanent resident status was still being considered. Then, in July 1978, the INS advised Borokinni that his application had been denied because he had entered the country fraudulently and not attended Kennedy College. The notice also directed Borokinni to leave the country voluntarily in August 1978. Apparently, Borokinni did not leave the country in 1978, and the INS

did not act to deport him. In 1980, Borokinni and his wife had a son and bought a house in Hyattsville, Maryland in which they still live. In 1982, Borokinni again applied for permanent resident status and, on September 20, 1982, the INS granted him permanent resident status.

In late 1982 and early 1983, Borokinni made three trips to Nigeria. In May 1983, as Borokinni returned from his third trip, security officers in Dulles Airport found him in possession of 440 grams of heroin and arrested him. Later in 1983, after Borokinni's first trial ended in a hung jury, a jury convicted him of one count of importing a controlled substance and one count of intent to distribute a controlled substance. The district court sentenced Borokinni to concurrent five-year sentences. Later that year, the INS issued Borokinni a show cause order. The order, containing allegations of Borokinni's wrongdoing, directed Borokinni to show why he should not be deported. In 1986, after his release to a halfway house and special parole program, Borokinni began working for a landscaper and had a second child, a daughter.

In 1987, Borokinni sought discretionary exclusion from deportation before an INS judge. The judge ruled that Borokinni was not eligible for exclusion from deportation because he had been a permanent resident for less than seven years. Therefore, the judge did not consider the equities of Borokinni's situation. Borokinni filed a two-sentence notice of appeal, stating that the judge had incorrectly determined his eligibility and that there were "constitutional implications" in the judge's decision. The government moved the judge for summary dismissal of the appeal, but the judge denied the motion, without comment, in 1988. The government filed another motion to dismiss the appeal summarily, this time with the BIA. During this entire time, Borokinni never filed a brief to accompany his notice of appeal. Then, on September 22, 1989, while his appeal was still pending before the BIA and seven years and two days after he had become a permanent resident, Borokinni moved the BIA to reopen his deportation proceedings.

Borokinni included various attestations to his good character with his motion to reopen deportation proceedings. Three friends wrote letters stating that Borokinni was fully rehabilitated and actively counselled young people in his church to avoid drugs. One of the three, Borokinni's pastor, also included an affidavit to the same effect. Borokinni also stressed that his family was dependent on him; that neither he nor his family had any ties to Nigeria, the country to which he would be deported; and that he was gainfully employed (since 1989 he has owned his own landscaping business).

In November 1991, the BIA ruled on Borokinni's appeal and motion to reopen. First, the BIA denied the agency's motion to dismiss the appeal summarily. The BIA then affirmed the INS judge's denial of exclusion from deportation, because Borokinni had not been a permanent resident for seven years at the time of that decision and had not pursued his appeal. Third, the BIA denied the motion to reopen, because it found that Borokinni had only attained seven years of permanent resident status through a frivolous appeal. The BIA then concluded that the equities in the case primarily related to Borokinni's behavior since his release from prison; that Borokinni had only been in the United States during that time because of his frivolous appeal; and that "[u]nder these circumstances, despite the considerable equities presented by the respondent, we do not find that the respondent merits a favorable exercise of discretion in his favor." Administrative Record (A.R.) at 84. Borokinni petitioned this court to review the BIA's final judgment, and that petition automatically stayed his deportation pending our resolution.

## II

██ We review denials of motions to reopen deportation proceedings under the abuse of discretion standard. *See Garcia–Lopez v. INS*, 923 F.2d 72, 74 (7th Cir. 1991); *Marcello v. INS*, 694 F.2d 1033, 1036 (5th Cir.1983).

Borokinni argues first that the BIA committed an abuse of discretion in not balancing the equities and specifically articulating how the reasons in favor of deportation outweighed the reasons against deportation. A major problem with this theory is *INS v. Rios–Pineda*, 471 U.S. 444, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985), a unanimous Supreme Court decision. In *Rios–Pineda*, a married Mexican couple had attained seven years of residency during the pendency of their appeals. The BIA rejected the Rios–Pinedas' motion to reopen, reasoning that they had only been able to achieve the required period of residency through the filing of a frivolous appeal. The Eighth Circuit Court of Appeals reversed and directed the BIA to reopen the proceeding. The Supreme Court reversed the Eighth Circuit and held that the BIA acted within its discretion in denying the couple's motion to reopen. Discussing the effect of the Rios–Pinedas' meritless appeal, the Court stated:

The BIA noted that respondents' issues on appeals were without merit and held that the 7–year requirement satisfied in this manner should not be recognized. In our view, it did not exceed its discretion in doing so.

The Court of Appeals thought the appeal had not been frivolous because it had resulted in further proceedings. But this was true only because seven years of residence had accrued during the pendency of the appeal. No substance was found in any of the points raised on appeal, in and of themselves, and we agree with the BIA that they were without merit. The purpose of an appeal is to correct legal errors which occurred at the initial determination of deportability; it is not to permit an indefinite stalling of physical departure in the hope of eventually satisfying legal prerequisites. One illegally present in the United States who wishes to remain already has a substantial incentive to prolong litigation in order to delay physical deportation for as long as possible. The Attorney General can, in exercising his discretion, legitimately avoid creating a further incentive for stalling by refusing to reopen suspension proceedings for those who became eligible for such suspension only because of the passage of time while their meritless appeals dragged on.

*Id.* at 450, 105 S.Ct. at 2102 (citations omitted). The Court so ruled even though the Rios–Pinedas, at the time of their motion to reopen, had made out a prima facie case of eligibility for suspension of deportation, which includes seven years of residency, good behavior, and extreme hardship if deported.

■ We find that *Rios–Pineda* is not distinguishable from this case. Like *Rios–Pineda*, this case involves a motion to reopen deportation proceedings. Although underlying *Rios–Pineda* was the *suspension* of deportation, and Borokinni's initial hearing involved *exclusion* from deportation, this distinction is insignificant.* Both types of relief are discretionary with the Attorney General. Also, exclusion from deportation requires seven years of permanent resident status, much like suspension requires seven years of residency. We find that *Rios–Pineda* controls this case, and we read *Rios–Pineda* as not requiring the BIA to perform any balancing of equities when ruling on motions to reopen deportation proceedings after a meritless appeal has allowed an alien to attain the required years of residency. Thus, Borokinni's argument that the BIA abused its discretion in not specifically addressing the equities in his favor is misplaced, provided that his appeal was indeed without merit.

■ Therefore, we must next determine whether the BIA erred in deciding that Borokinni's appeal was meritless. We review this decision under the abuse of discretion standard. *See Rios–Pineda*, 471 U.S. at 450, 105 S.Ct. at 2102. At Borokinni's 1987 hearing, the INS judge ruled that he was not eligible for exclusion from de-

---

* Borokinni originally sought suspension of deportation, but abandoned that pursuit at the hearing before the INS judge in 1987, when he sought exclusion from deportation. Borokinni is not eligible to seek suspension of deportation until May 1993, ten years after he committed his heroin offenses. *See* 8 U.S.C. § 1254(a)(2).

portation because he had not been a permanent resident for seven years. The Fourth Circuit had previously held that seven years of permanent resident status is required before an alien is eligible for exclusion from deportation, in *Chiravacharadhikul v. INS,* 645 F.2d 248 (4th Cir.1981).

Borokinni's notice of appeal from the INS judge's decision consisted of two sentences stating (1) that the judge had erred in determining statutory eligibility for exclusion and (2) that there were "constitutional implications" that he was not allowed to address at the hearing. The problem with both of the grounds Borokinni raised in his notice of appeal is that he never pursued them. Borokinni never filed a brief, even after he was given a deadline for filing in April 1989. With only Borokinni's notice of appeal before it, and *Chiravacharadhikul* the law of this circuit, the BIA logically concluded that the appeal was frivolous, and we see nothing in the record to disturb that conclusion.

Borokinni argues that the BIA abused its discretion in finding that his appeal had been frivolous even though the INS judge and the BIA itself had denied the government's motion for summary dismissal of the appeal. Borokinni points out that motions for summary dismissal should be granted if the appeal is deemed frivolous. *See* 8 C.F.R. § 3.1(d)(1–a)(iv). In 1988, the INS judge denied the government's motion to dismiss Borokinni's appeal summarily. The government then moved for summary dismissal before the BIA, and the BIA denied the motion in the same opinion in which it found that the appeal had been frivolous. Such inconsistency, Borokinni reasons, constitutes an abuse of discretion. We do not agree that the two denials of the motions for summary dismissal of Borokinni's appeal somehow represented a victory for Borokinni. First, in 1988, the INS judge denied the motion for summary dismissal without expressing any reasons for his decision. *See* A.R. at 99. Since Borokinni had not yet filed a brief or been given a deadline for filing a brief, the judge would have acted prematurely if he *had* granted the motion for summary dismissal. Second, it is unremarkable that the BIA,

with both the government's motion for summary dismissal and Borokinni's notice of appeal before it, chose to deny the government's motion and reach the merits of Borokinni's appeal. In addressing Borokinni's appeal, the BIA explained why the appeal was frivolous and dismissed it. It seems that the BIA could have granted the motion for summary dismissal without addressing the appeal or, as it chose to do, denied the motion for summary dismissal and addressed the appeal. Therefore, as a practical matter, the inconsistency that Borokinni alleges is insignificant, and we hold that the BIA did not abuse its discretion in finding Borokinni's appeal frivolous after denying the government's motion for summary dismissal.

Because we have found no abuse of discretion in the judgment of the Board of Immigration Appeals, Borokinni's petition is hereby denied.

PETITION DENIED.